Read, J.,
dissenting. I can not concur in the opinion of a majority of the court, that resulting benefit may be offset against the value of property taken for public use.
,The constitution declares:
“ Private property ought and shall for ever be held inviolate, but always subservient to the public welfare, provided a compensation in money be made to the owner.”
This is the supreme organic law of the land, limiting state ^sovereignty. Its binding force is admitted. The question is, as to the meaning of this clause of the constitution. A resort to any known rule of construction would not seem to leave it in doubt. The words of the constitution are certain and explicit. It asserts:
1. The inviolability of private property.
2. Its subserviency to the public welfare; and,
3. The condition upon which it may be subjected to public use.
The condition of subjecting private property to public use, is defined with equal precision by the following exact phraseology : “Provided a compensation in money be made to the owner. The - condition is compensation — the compensation, money. Such is the constitutional limitation of the right of eminent domain.
The only points, then, upon which the mind can cavil for an instant, is, as to the time when, and the amount to which, compensation shall be made.
As to the time when compensation shall be made.
Compensation must be made before or at the moment the public dispossesses the private owner and subjects his property to public use. The state can not seize private property prior to compensation. The words of the constitution are, private property is “always subservient to tho public welfare, provided a compensation in money be made to the owner.” To render it moro clear, read the constitution, thus: “ Provided a compensation in *177 money be made to the owner,” private property “is always subservient to the public welfare.” This language implies condition, power, possibility, arising upon the happening or existence of a particular event or thing.- If a particular event or thing happen or transpire, such a result follows — or, tho condition happening, the power result^. If compensation be made, private property is subservient' to the public welfare. The power to subject property, results from compensation being made. Hence compensation is a condition precedent to the seizure of private property to public uso. The reason for *this construction is even more strong. If the public may take private property for public use, without compensation being first made, the owner may be de prived of tho means of support. The owner may be an infant sick or disabled, and unable to procure a subsistence. If payment could be postponed for a week or a day, it might be for a year or an indefinite length of time. It has been repeatedly decided that a law subjecting private property to public use, without providing a clear and specific mode of compensation, is invalid. Extreme cases may be put, such as the seizure or destruction of private property in time of war, or the destruction of property tc prevent the spread of fire in a city. These are cases of necessity, and rest upon the principle of self-preservation, and in no respect invalidate the general law. In these cases, the necessity may require the immediate seizure or destruction of property before it is possible to make compensation; but they are like the ease of a man being compelled to kill his adversary to save his own life. The law recognizing the right of self-defence, excuses the homicide. Tho extreme necessity becomes a law of itself.
As to the amount of compensation.
This depends upon the manner in which the state has subjected private property to public use. If a mere injury be done, without disturbing the possession or ownership, the amount pf damage should be to the extent of the injury. If the property has been subjected to a mere temporary use, to the value of the use. If the entire property has been converted to the public use, the compensation should be the full and fair value of the property so taken.
This compensation must be made in money. But a majority of the court held that, where private property has been seized to a public use, that, if any benefit result to the owner, that may be *178, 179 deducted from the value of the property so takou, and payment of the balance, so ascertained, in money, to the owner, is the compensation intended and meant by the constitution. This construction is manifestly opposed to the object, ^spirit, and letter of the constitution. The constitution declares that, if private property be taken for public use, compensation shall bo made the owner in money. But a majority of the court say, if a portion of a man’s private property be taken for public use, and the remainder be benefited to the extent of the value of the property so taken for a public use, no further or additional compensation need be made. That is, the state may take a part of a man’s private property, and make him no direct compensation in money whatever, provided there be a reflected benefit over upon the remaining property of the owner, in the opinion of a jury, equal in value to -the property seized to the public use. The state addresses the owner in this wise: “The public welfare requires that the state should take from you a part of your property for the purpose of public improvements; if the public improvement will not render the remainder of your property mor’e valuable or of equal value to the whole before such part taken, you are entitled to no compensation. ” Is this compensation in money? At most it is but compensation in reflected benefit. It is not compensation in money. To say that it is, strikes mo as a mere mockery of words,
Put the proposition in this form: The state takes for public use a part of a man’s land worth $500 — the whole tract of land, a part of which has been taken, was worth $1,000 — -the remaining part to the owner, after the improvement, is worth $1,000. Upon the construction given by the majority of the court, the account between the state and the private owner would stand thus:
The state debtor to the owner for the land taken............... $500
The constitution requires compensation in money.
Credit to the state for an improvement, estimated to
benefit the remaining land of the owner..................... 500
Balance due the owner.................................................. $500
The argument to sustain this construction runs thus: The constitution requires compensation to be made in money; benefit *to the remaining property of the owner has resulted from the public improvement equal to the value of the property taken; *180 therefore compensation has been made to the owner in money. This argument rests upon tho assumption that a benefit resulting to the owner of land, by the construction of a public work, is a payment of money to such owner, in amount equal in value to such benefit. That is, enhanced value and money are the same thing.
To escape the irresistible force of this conclusion, it is contended that the constitution does not require compensation to be made to the amount of the. value of tho land or property taken ; but to the extent of the injury sustained in consequence of taking such land or property. That to ascertain the amount of injury it is proper to take into consideration the advantages and disadvantages which result to the owner; and that, if the advantage is equal to the value of the property taken, the owner has sustained no injury, and hence is entitled to no compensation. This is arriving at the same result, only in a different mode. It is simply varying the statement of the proposition, without altering its nature or the result. What difference does it make whether you offset the benefit directly against the property taken, and hence hold that no further compensation need be made, or offset the benefit against the value of the property taken, to show that no injury had been sustained, and therefore that the constitution required no compensation to be made? In either view, no compensation is made to the owner in money, for the property taken. It merely results in this, that in one case resulting benefit is regarded as compensation in money ; and in the other, that taking a man’s property without doing him an injury, in consequence of a reflected advantage, is compensation in money to tho owner, to the extent of the value of the property taken. By either mode it comes to this, and no ingenuity can avoid it, that the state may take private property for public use, and make no compensation to the owner in money. The constitution says compensation shall be made to the owner in money.
^Compelled by the pressure of the argument, it is admitted that, if this were a now question, a proper construction of the constitution would require compensation to be made to the owner in money, to the extent of the value of the property taken to the public use. But it is contended that the authorities of the state have uniformly acted upon tho principle of compensating the owner of private property to such amount as he may be deemed entitled, after deducting benefits and advantages from the value *181 of the property taken, and not to the full value of the property. That the courts have also been in the habit of recognizing this as the true constitutional compensation, and that it is now too late to depart from it. Usage and practice can not alter the constitution. It suffers no rust, and is as bright now as upon the morning it came into existence. Sovereignty must reside somewhere. Our theory of government'recognizes it in the people, to whom it belongs, and from whom it must emanate. Government originates with them, and they alone have the right to prescribe the kind, to alter or modify, and to confer and limit the powers of government. This, by them, has been dono by a written constitution, creating the’state government, and assigning and limiting its powers. Now, if the practice of the state authorities, in any or all of the departments, can prevail against the constitution, and acquire to the state powers not delegated by that instrument, or take away rights secured by it to the people, it is an assumption that the powers of the states and the rights of persons depend not upon the constitution, but upon the practice of the state authorities; and that the constitution may be altered and nullified, not by the people only, who made it, but by the action of the state authorities, in disregarding its requisitions. I am certain the most confident advocates of this notion of construing the constitution, from practice violating its provisions, will shrink from this conclusion. True, contemporaneous construction, evidenced by uniform practico, may be resorted to in construing doubtful written laws and constitutions. But where there is no ambiguity, there is no room for construction; and the laws, as written, must prevail. In this instance there is neither doubt nor ambiguity in the wording of the constitution.
It was contended, in the case of Dixon vf. City of Cincinnati, before the court at this term (although, in the opinion of a majority of the court, it was not necessary to decide the point in that case), and has been repeatedly asserted by the legislature, in the grant of municipal charters, that reflected benefit may not only be offset against the value of property taken, but that the owners of adjacent lands may be charged with the cost of constructing the public improvement in proportion to the amount of benefit resulting to each. If the owner of property be charged with the payment of money to the extent of a benefit resulting to his property, by the construction of a public improvement, upon what *182 principle is it to be done? It will not be contended, in this instance, that the money subjected to public use is compensation in money. This would be absurd.
To adopt such a construction of the constitution, the state could subject private property to public use, and construct public improvements to any extent, without any charge whatever upon tho public treasury. Resulting benefit to the owner of property subjected to public use, and those whose property was near to tho public improvement would be charged with the whole expense. This overturns the whole doctrine of representation and taxation. It would authorize the people of a particular section of the state to be charged with the whole cost of a public improvement projected by the state, by the vote of members of the legislature, neither whom nor whose constituents are charged with the pay ment of money imposed by their vote. The legislature represents the entire state, and a vote of theirs creating an obligation to pay money, falls upon the whole people of tho state, and can not be limited to a part. So of a city council, their vote represents the whole city, and binds all the inhabitants of the city. No man can vote, through his representative, to charge his neighbor with the payment of *money for which ho does not, by such vote, become so liable himself- These are truths too obvious to require illustration. But to say that tho legislature could pass a law, imposing the entire burden of constructing a public improvement upon the people of a part of the state, shocks tho-notions of every man, and is denied by all. If the state could do no such thing, much less could the legislature confer power upon a city council, by vote, to charge the cost of a public improvement, constructed for the benefit of the whole city, upon a part only of the inhabitants. The security of the owner of property, that he shall not be plundered under the plea of taxation, is, that taxes must be imposed equally upon the whole community. If the power of special taxation can be supported upon the pretense of benefit resulting from improvements made by the public, the owners of property hold it at the mere hazard of improvident legislation.
It is claimed that, permitting resulting benefit to be set off against the value of property taken for public use, is only construing the constitution in conformity with a principle of natural justice. That it is nothing but right, in compensating the owner, *183 to take into consideration such advantages as result to him from the public improvement. There is nothing in this argument. Natural justice would require that the state should be charged with the enhanced value resulting to the public property from private improvements, or that private property should bo charged with enhanced value resulting from public improvements. To carry out the principle — if the improvement of a man’s private property should increase the value of his neighbor’s property, it should authorize a charge to the extent of the reflected benefit. It is well known that improvements, both public and private, give increased value to. the whole property of the community. It is just as consistent with the principles of natural justice that individuals should obtain pay for benefits resulting to property from their private improvements, as that the public should receive compensation for benefits to private property arising from public improvements. *The idea of permitting private individuals to charge each other with such benefit as may result to each other’s property, from improvements which each may make, strikes every one as perfectly absurd. Why is it not just as absurd to permit the state to charge private persons with the reflected benefit resulting from public improvements, either in the way of compensation for property taken, or directly by way of special tax?
The constitutional requisition of “compensation in money,” excludes every other interpretation except payment in money to the value of the property taken. The word “ money ” refers to the amount to be paid, as well as to the kind of payment. Money is the measure of value, as well as the medium of payment. No other construction will give the word its full meaning. But it is urged that it is not a rule of value to fix the amount to be paid, but only the specified kind of payment, after the amount to be paid is ascertained in some other mode. That it merely forbids the state to compensate the private owner in property. Now, payment to private owners for property taken for public use, in other property, was not the evil which the constitution intendod to guard against; but the evil which the history of governments disclosed was, that governments often seized private property without making any compensation at all, or at least not adequate compensation. The history of governments did not show any great grievance or tyranny on the part of governments, in compelling an exchange of property, of equal value, belonging to the *184 government, for that of private persons. Such a notion, however gravely urged, is idle. What danger is there that the state will compel individuals to barter their property for property of the state of equal value. The state has no such power conferred upon it by the constitution, and not by implication, as all powers not granted by that instrument are reserved to the people. Hence, the word “ money” was not introduced to guard against any such evil, and could only refer to (he value to be paid for property taken for public use, as compensation to the owner.
*The truth is, the constitution will bear but one construction. It requires that compensation shall be.made in money to the full'value of tho property taken to public use. Tho private owner may bo entitled to additional compensation for an injury resulting to the remainder of his property from a seizure of part. If such claim bo made, resulting benefit may be offset against resulting damages. But, at all events, the owner is entitled to the value of the property taken for public use, from which any reflecting advantage can not be deducted.
Any other construction would never have been for a moment entertained, except from the fact that public improvements were deemed of the utmost importance to the growth and welfare of the state. An anxioty to carry out a scheme of internal improvement at the least possible expense, has induced the legislature and the courts to forget the provisions of the constitution. But, however great the public benefit derived from public improvements, it should be remembered that the highest possible public good is to secure every person in the full and complete enjoyment of his property. This clause of the constitution was designed to check the license of power, and secure to every person the full enjoyment of the natural and constitutional right. The right to acquire, possess, and enjoy property of eminent domain is limited, and the state can not seize upon private property, without making full compensation in money. It is urged that the public good may require the sacrifice of tho property of the individual. To guard against this very thing was the design of the constitution. In time of war, and great and imminent public pressure, the sacrifice of person and property is both the dictate of duty and glory. But when tho proper question is, whether tho public shall pay for property taken for public use, or tho private owner shall lose it, no such duty exists. The right to hold and enjoy property, is *185 coupled with the right of life. The maxim of sacrificing the individual to the public, is one of despotism. The public is not consulted when a man is born, nor does a man live by public permission ; he holds life by the right of God; ^and the design of our government is to protect him in these rights. We should be peculiarly careful to preserve the constitutional inviolability of private property, since the legislature has been so free in conferring the right of eminent domain upon municipal and private chartered corporations. Private companies are formed for their own benefit, and seek from the state the right to subject to their use private property, upon the ground that the public will be benefited by their operations. It is well known that the contemplated advantage oftentimes outruns all reason and experience. Let this notion be the measure of benefit to the owners of private property, to the offset against the value of the property taken, materials, etc., for the construction of these works, and you give free license to chartered companies to run riot over the rights of private property. If this may be done without compensation before seizure, private property is exposed to the hazard of every wild scheme which may obtain. How often is it that companies commence and fail? It occurs so frequently that it is well that they are without bodies as well as souls-; otherwise, the numerous dead would be an offense to the nostrils of the land.
We should remember that the highest possible good is to be ' derived from a strict adherence to the constitution, and by securing to every person the full enjoyment of every constitution»1 right.